United States District Court
Middle District of Florida
Jacksonville Division

**AKOT AKOT,**

 *Plaintiff,*

v.              NO. 3:23-cv-1025-WWB-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

___

## Report and Recommendation

 Before the Court is the Commissioner of Social Security's motion to dismiss for mootness and thus lack of subject-matter jurisdiction, Doc. 10, as supplemented, Doc. 16. Akot Akot, proceeding without a lawyer, has not responded to the motion or an order directing him to update his telephone number, Doc. 14. The undersigned recommends granting the motion and dismissing the action without prejudice.

## Complaint

 Akot sues using the form for a "Complaint for Review of a Social Security Disability or Supplemental Security Income Decision." Doc. 1; *see* AO Form Pro Se 13 (Rev. 12/16). As the "Basis for Jurisdiction," he checks boxes next to "Disability Insurance Benefit Claim (Title II)" (DIB) and "Supplemental Social Security Income Claim (Title XVI)" (SSI) and writes "8/17/2023" as the day he received a final notice from the Commissioner. Doc. 1 at 1–3. As the "Statement of the Claim," he checks a box next to "The Commissioner's decision was based

on legal error." Doc. 1 at 3. As "Relief," he checks boxes next to "Order the defendant to submit a certified copy of the transcript and record, including evidence upon which the findings and decision are based"; "In the alternative, remand to the defendant for consideration of the evidence"; and "Grant any further relief as may be just and proper under the circumstances of this case." Doc. 1 at 3–4. On the complaint, he handwrites, "I live with married people have four kids," "My condition very bad right now," and "I have no attorney at all. I'm looking for attorney or judge to help with my case." Doc. 1 at 2, 4.

To the complaint, Akot attaches documents, including correspondence from the South Dakota Department of Human Services (SDDHS), the Social Security Administration (SSA), and the Florida Department of Health (FLDOH), described here generally and in chronological order:

<u>2022</u>

- An August 2 letter from the SSA. Doc. 1-1 at 73–75. The SSA informs Akot it is reviewing his receipt of DIB. Doc. 1-1 at 73–74. On the letter, someone handwrites what appears to be a list of notes pertaining to questions on tests, a time frame, and a Sioux Falls address and phone number. Doc. 1-1 at 75.

- An August 17 lease agreement for an apartment in Sioux Falls, South Dakota, signed by the lessor but not by Akot. Doc. 1-1 at 49–57.

- A September 16 utility bill from Sioux Falls. Doc. 1-1 at 58–59.

- An October 26 letter from the SSA. Doc. 1-1 at 38–39. The SSA responds to an apparent request from Akot for information about his record. Doc. 1-1 at 38–39. The SSA states, "The regular monthly Social Security Payment is [] $940.00 … You are entitled to monthly [DIB]." Doc. 1-1 at 38.

- An October 28 letter from the SSA. Doc. 1-1 at 40–42. The SSA informs Akot he will receive $940 in provisional DIB based on his request for

2

reinstatement. Doc. 1-1 at 40. The SSA states that under the "Ticket to Work" program, Akot can receive up to six months of provisional benefits while his request for reinstatement is decided. Doc. 1-1 at 40.

- A November 14 letter from the SDDHS. Doc. 1-1 at 61–71. The SDDHS includes a blank "Function Report" with instructions on how to complete the report and states, "We are the office that makes disability determinations for the [SSA]. We are writing about your disability claim because we need more information about your condition, daily activities, or work history." Doc. 1-1 at 61–71.

<u>2023</u>

- A February 3 letter from the SSA. Doc. 1-1 at 36–37. The SSA responds to an apparent request from Akot for information about his record. Doc. 1-1 at 36–37. The SSA states, "The regular monthly Social Security Payment is [] $0.00 … Benefits were stopped beginning November 2022." Doc. 1-1 at 36.

- A February 8 letter from the SSA. Doc. 1-1 at 45. The SSA informs Akot he no longer qualifies for the "Ticket to Work" program. Doc. 1-1 at 45.

- A March 1 utility bill from Sioux Falls. Doc. 1-1 at 13–14.

- A June 1 letter from the SSA. Doc. 1-1 at 15–17. The SSA confirms with Akot a telephone appointment on June 20 with the Jacksonville Social Security office to discuss his claim for DIB. Doc. 1-1 at 15–17.

- A July 5 appointment notice from the FLDOH. Doc. 1-1 at 18–23. The FLDOH states, "We are the office that makes disability determinations for the [SSA]. We are working on your claim for DIB. We made one or more appointments for you because we need more information about your condition." Doc. 1-1 at 18.

- A July 5 letter from the FLDOH. Doc. 1-1 at 24–35. The FLDOH includes a blank "Function Report" with instructions on how to complete the report and states, "We are the office that makes disability determinations for the [SSA]. We are writing about your disability claim because we need more information about your condition, daily activities, or work history." Doc. 1-1 at 24–35. On the last page of the letter, someone handwrites, "I have work 6/6/2022 and lose my job on 10/11/2022 October, no social security income, also I have no job. Until

3

> December 20, 2022 have found new job and lose my job on 2/2023 and lose my social security on 2/2023." Doc. 1-1 at 35 (some capitalization omitted).

- An August 16 letter from the SSA. Doc. 1-1 at 10–12. The SSA informs Akot of a $1,962 overpayment of Social Security benefits. Doc. 1-1 at 10–12.

- An August 17 letter from the SSA. Doc. 1-1 at 2–5. The SSA denies Akot's request for reinstatement of his DIB. Doc. 1-1 at 2–5.

- An August 24 letter from the SSA. Doc. 1-1 at 7–9. The SSA responds to an apparent request from Akot for information about his record. Doc. 1-1 at 7–9. The SSA states, "Beginning February 2023, the full monthly Social Security benefit before any deductions is $0.00 … Benefits were stopped beginning February 2023 … You are entitled to monthly [DIB] … Beginning January 2015, the current Supplemental Social Security Income payment is $0.00 … Payments were stopped beginning January 2015 … We found that you became disabled under our rules on November 11, 2011 … You are entitled to monthly benefits as a disabled individual." Doc. 1-1 at 7–8.

- An undated letter to Akot about an employee benefits program at "randstad." Doc. 1-1 at 6. On the letter, someone handwrites, "This is my new job mak [sic] $12 dollars in hours, sometimes we have no job, we work Monday to Thursday." Doc. 1-1 at 6 (some capitalization omitted).

**Motion to Dismiss**

To support his argument that the action is moot, the Commissioner provides a declaration from Alberta Perry, Center for Disability and Program Support Social Insurance Specialist, and a "Notice of Revised Decision." Docs. 10-1, 10-2. Perry declares:

1. [Akot] was initially approved for [DIB] in 2012 with an onset date of November 11, 2011.

4

2. [Akot's] benefits were ceased due to work activity on August 13, 2022.

3. On October 11, 2023, [he] filed a request for expedited reinstatement of his benefits.

4. To be eligible for expedited reinstatement, the claimant must have ceased substantial gainful work activity and continued to be disabled by the same impairment found in the initial claim or a new impairment.

5. Upon review, the Disability Determination Service (DDS) found [he] was no longer disabled by the same impairment as the initial claim or any new impairment.

6. [Akot] did not timely request reconsideration of the expedited reinstatement denial; however, on March 24, 2023, [he] filed a request for Good Cause for Late Filing.

7. Due to a processing error, the Good Cause request was not granted, and [Akot] filed another initial request for expedited reinstatement on June 7, 2023.

8. The DDS issued another initial denial notice [on] August 18, 2023.

9. Upon additional review of [Akot's] record, it was determined that [his] benefits were erroneously terminated in August 2022.

10. [Akot's] 2022 earnings, the basis upon which benefits were ceased, were not properly developed.

11. Further development indicated that [Akot's] 2022 and 2023 earnings represented an unsuccessful work attempt, and [his] benefits should not have been ceased.

12. The local agency Field Office has begun processing [Akot's] claim to reinstate benefits.

13. On October 16, 2023, the Field Office sent [Akot] a Notice of Revised Decision advising him that his benefits are being reinstated.

> 14. A request to correct [Akot's] record, return his claim to pay status, and remove the assessed overpayment is currently pending at the Payment Center, which can take up to 30 days to process.
>
> 15. The Field Office is attempting to locate [Akot] to initiate special payments until his record has been corrected.

Doc. 10-1 at 1–3 (citations omitted).

In addition to information on who to contact with questions, what Akot could do if he disagreed with the decision, the obligation to report events that could affect benefits, and the "trial work period," the revised notice provides:

> We looked again at the evidence in your Social Security disability claim and found that your disability is continuing. …
>
> You have completed your trial work period. Although you are now working (or have worked and stopped), we find that the work you have been doing does not show that you can do substantial work.
>
> We counted the following as trial work month(s):
>
> May 2013
> February 2014
> March 2014
> September 2015
> October 2015
> November 2015
> December 2015
> June 2016
> July 2016
>
> Your claim will be reviewed from time to time to see if you are still eligible for benefits based on disability. When your claim is reviewed, you will be contacted if there is any question as to whether your eligibility continues.
>
> If you are receiving [SSI] payments, any decision about that claim will be sent in a separate notice.

Doc. 10-2 at 1–3.

The Acting Commissioner argues that, under the circumstances described by Perry and explained in the notice, Akot "does not present a case or controversy on which this Court can provide relief because SSA has made a determination that [his] benefits should not have been ceased and has initiated actions to correct the error." Doc. 10 at 5.

**Supplement to Motion to Dismiss**

Because Akot checked the jurisdictional boxes for DIB and SSI but the Commissioner addressed only DIB in his motion to dismiss, the undersigned directed the Commissioner to supplement the motion to dismiss with information about SSI. Doc. 11. The Commissioner responds with a declaration from Elvira Rodriguez, "Lead Specialist for the [SSA SSI] Team." Doc. 16-1. Rodriquez declares:

> As part of my duties, I review the [SSA]'s computerized records systems. Through the performance of my duties in this position and review of the agency's records, I have learned the following information regarding … Akot's case:
>
> 1. [Akot] was notified in February 2014 that his … SSI … would be suspended beginning March 2014 due to monthly … DIB… in excess of the SSI benefit rate.
>
> 2. The February 2014 notice explained [Akot]'s appeal right regarding SSI benefits.
>
> 3. SSI recipients have 12 consecutive months after the effective date of a suspension to have benefits reinstated without filing a new SSI application.
>
> 4. [Akot] did not appeal the March 2014 SSI suspension, nor has he filed a new SSI application.
>
> 5. [Akot] has not received SSI since February 2014.

7

> 6. As more than twelve months have passed since Plaintiff's March 2014 suspension, [Akot] would need to file a new SSI application in order for the agency to review his current eligibility for SSI.

Doc. 16-1 at 1–2.

According to the Commissioner, "In light of the above information, [Akot] does not have a current SSI application pending before the Commissioner, and the cessation [Akot] appealed to this Court concerned only his eligibility for DIB. Therefore, the Commissioner respectfully moves this Court to dismiss [Akot]'s complaint consistent with the arguments" in the motion to dismiss (Doc. 10). Doc. 16 at 2–3.

**Law & Analysis**

In response to a complaint, a party may move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where a party is factually attacking jurisdiction irrespective of the pleadings, the court may consider evidence outside the pleadings. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). For a factual attack, the court gives no presumptive truthfulness to the complaint allegations and may decide disputed issues of material facts. *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A dismissal for lack of jurisdiction is not a judgment on the merits and must be entered without prejudice. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

Article III of the United States Constitution limits federal-court jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. The

Supreme Court of the United States has interpreted the provision to require an "actual controversy" at all stages of review. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016), *as revised* (Feb. 9, 2016). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 160–61 (internal quotation marks and quoted authority omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks and quoted authority omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (quoted authority omitted). "The burden of proving mootness generally falls heavily on the party asserting it." *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018) (alteration and quoted authority omitted).

"In a social security action seeking payment of benefits, the actual payment of those benefits generally moots the action." *Maloney v. Soc. Sec. Admin*, No. 02-cv-1725, 2006 WL 1720399, at *6 (E.D.N.Y. June 19, 2006) (internal quotation marks and citation omitted), *aff'd*, 517 F.3d 70 (2d Cir. 2008); *see also Anderson v. Sebelius*, No. 09-cv-16, 2010 WL 4273238, at *3 (D. Vt. Oct. 25, 2010) ("Generally, in a … social security case, mootness is measured by whether a claimant receives the benefits he or she is seeking.").

Here, Akot appeals the SSA's August 17, 2023, decision denying his request for reinstatement of his DIB, *see* Doc. 1 at 3 (handwriting "8/17/2023" as the day he received the decision he is appealing), and requests an order requiring the Commissioner to file a certified transcript (which would permit

9

this litigation to move forward here), an order remanding the case to the SSA for further consideration of the evidence on which the Commissioner based the denial, or other appropriate relief, *see* Doc. 1 at 3 (relief section). Although he checked boxes next to both DIB and SSI, *see* Doc. 1 at 2–3, he limits his lawsuit to the August 17 decision, which concerns only DIB, *see* Doc. 1-1 at 2–5. Rodriguez's declaration explaining the last decision on Akot's SSI benefits was a decade ago, *see* Doc. 16-1 at 1–2, makes clear Akot is not appealing any decision concerning SSI.

The SSA's decision to reinstate Akot's benefits, Doc. 10-1 ¶¶12–15; Doc. 10-2, is an intervening circumstance depriving Akot a stake in the outcome of the litigation. He is getting precisely what he set out to get in filing this lawsuit: reinstatement of his DIB benefits. This action is moot and must be dismissed. *See, e.g.*, *Maloney*, 2006 WL 1720399, at *6 ("[A]ny claim for benefits would be barred as moot since plaintiffs received retroactive benefits subsequent to the initiation of the lawsuit."); *Favors v. Soc. Sec. Admin*, No. 22-cv-262, 2022 WL 17370243, at *5 (D.D.C. Oct. 17, 2022) (holding the plaintiff's claim for benefits was moot because the SSA had restored the benefits; citing cases); *Guillemette v. Colvin*, No. 15 C 6445, 2016 WL 5477538, at *3 (N.D. Ill. Sept. 29, 2016) (holding the plaintiff's claim for waiver of repayment and removal of a debt notification from records was moot because the SSA determined he did not have to repay and removed the debt notification from records).

Thus, dismissal without prejudice is warranted. The undersigned **recommends** dismissing the case without prejudice and **directing** the clerk to close the file.

**Objections and Responses**

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A [district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). "A party failing to object to … findings or recommendations … in a report and recommendation … waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on February 28, 2023.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   Akot Akot (by U.S. Mail and email)
     1038 Caliente Dr., Apt. 17
     Jacksonville, FL 32211
     lifechangeovertime@yahoo.com